# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2898

_____

Elizabeth Zick, Administrator of the Estate of Michael Gerald Wood

*Plaintiff - Appellant*

Jacqueline Wood

*Plaintiff*

v.

Paccar, Inc.

*Defendant - Appellee*

Peterbilt Motors Company, a division of PACCAR Inc.; Unknown Fabricators and Manufactures

*Defendants*

JMJ Equipment Transport, Inc.

*Claimant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: May 10, 2022
Filed: August 26, 2022

_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Michael Gerald Wood was severely injured in a crash while he was driving a Peterbilt semi-truck.[1] He sued the truck's manufacturer, PACCAR, Inc. (PACCAR), alleging that the truck's defective design caused his injuries. A jury returned a verdict in PACCAR's favor. His estate appeals, arguing that the district court[2] committed several evidentiary errors at trial. We affirm.

## I. Background

Wood was driving the semi-truck through an intersection in Dubuque, Iowa, when it collided with another vehicle, slid to the corner of the intersection, and crashed into a light pole. Upon impact, the light pole forced the cab inward around Wood, causing extensive injuries to his lower extremities. Wood's state-court lawsuit was removed to federal court. The suit's primary theory was that Wood's injuries were caused by the truck's lack of two safety features: (1) a steel-reinforced bumper or steel bar called a front-underride protection system and (2) a strengthened cab.

---

[1]Michael Gerald Wood died during the pendency of this appeal. Elizabeth Zick, administrator of Wood's estate, was substituted as a party pursuant to Federal Rule of Appellate Procedure 43(a)(1).

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

The case proceeded to discovery, which was overseen by a magistrate judge.[3] Following initial depositions, the magistrate judge granted Wood's motion to compel additional depositions of two PACCAR employees, Larry Bean and Anthony Weiblen. Wood then moved to extend the discovery deadline to permit his expert, Dr. Andreas Vlahinos, to update his expert report to incorporate any new testimony. The magistrate judge granted the motion, but required that the new report identify with particularity the portions of the new depositions that enabled Dr. Vlahinos to complete additional analysis.

Dr. Vlahinos's second report contained a written description of computer crash simulations, known as finite element analysis—modeling that was not present in the first report—together with video versions of those models. PACCAR moved to exclude the report as untimely on the grounds that it went beyond the scope of the first report and that it did not indicate with particularity the portions of the deposition testimony that permitted additional analysis. The magistrate judge recommended that the motion be granted, noting that the new report failed to adhere to the discovery order and that its admission would prejudice PACCAR. The magistrate judge nonetheless noted that PACCAR could open the door to the second report's admission by attacking the first report on the grounds that its conclusions were not supported by modeling and simulations. The district court adopted the magistrate judge's recommendation and granted the motion to exclude the second report. Wood thereafter filed a timely rebuttal notice that contained the modeling used in Dr. Vlahinos's second report.

PACCAR sought to present a defense that the truck conformed to state-of-the-art design and testing technologies, which would absolve PACCAR of liability under Iowa law. See Iowa Code Ann. § 668.12. Wood filed a motion in limine to prohibit

---

[3]The Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

PACCAR from introducing evidence about this state-of-the-art defense, arguing that it could be established only by expert testimony, which PACCAR had failed to give notice of. After hearing oral arguments at the pretrial conference, the district court reserved ruling on the merits of the motion.

The case proceeded to trial. After a mistrial was declared because of the COVID-19 pandemic, Wood moved to modify the scheduling order and re-open discovery to permit him to present during his case-in-chief the modeling and videos contained in Dr. Vlahinos's second report. The district court denied the motion, concluding that Wood had failed to show good cause to modify the scheduling order.

The case proceeded again to trial, during which Bean and another PACCAR employee, Terry Manuel, presented testimony about PACCAR's state-of-the-art defense and about its compliance with various safety standards. Although Wood raised several objections throughout their testimony, he did not object on the ground that it constituted expert opinion.

After the close of the parties' case-in-chief, the district court announced that, although PACCAR had not opened the door, it would admit the contents of Dr. Vlahinos's second report on rebuttal. PACCAR's expert promptly prepared responsive video exhibits to the second report's videos. Wood objected to the videos because Dr. Vlahinos had not had the opportunity to review them before testifying. Wood nonetheless sought to introduce the video exhibits from Dr. Vlahinos's second report. The district court instructed the parties that if they could not come to an agreement, both would be limited to still images and prohibited from playing the simulation videos for the jury. On rebuttal, Dr. Vlahinos presented testimony and still images from his second report.

## II. Analysis

### A. Exclusion of Dr. Vlahinos's Simulation Videos

The magistrate judge did not err in concluding that the second report was untimely.  See Fed. R. Civ. P. 26(a)(2)(D) ("A party must make [expert] disclosures at the times and in the sequence that the court orders.").  The magistrate judge made clear when he granted Wood's motion to extend the discovery deadline that the extension of time was not intended to give Wood "the opportunity to expand the scope" of Dr. Vlahinos's expert report and that "any supplemental opinion" was thus required to "identify with particularity the facts learned" from the second depositions that permitted Dr. Vlahinos to complete his analysis.  While the second report referred generally to Bean's and Weiblen's depositions and pointed to exhibit numbers, it failed to identify information "with particularity" that informed its new simulations.  Wood thus failed to provide a second report that complied with the magistrate judge's orders on or before the discovery deadline, as required by the Federal Rules.  See Fed. R. Civ. P. 26(a)(2)(D).

We review the district court's exclusion sanction for abuse of discretion. Vanderberg v. Petco Animal Supplies Stores, Inc., 906 F.3d 698, 702 (8th Cir. 2018). "If a party fails to provide information . . . as required by Rule 26(a)," then the party may not use that information at trial, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "A district court 'has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' when a party fails to provide information . . . in compliance with Rule 26(a)." Gruttemeyer v. Transit Auth., 31 F.4th 638, 644–45 (8th Cir. 2022) (quoting Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008)).  In fashioning a remedy, courts should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the

order and efficiency of the trial, and the importance of the information or testimony." Id. at 645 (quoting Wegener, 527 F.3d at 692).

The district court did not abuse its discretion by excluding the second report from Wood's case-in-chief, in admitting the written and photographic contents on rebuttal, and by excluding the report's videos from the entire case. The magistrate judge considered Wood's justification for failing to submit a second report that complied with the court's orders. Wood largely focused on the broader issues that plagued the discovery process and on PACCAR's alleged refusal to turn over information needed for Dr. Vlahinos's modeling. But Wood failed to explain why the report itself did not "identify with particularity" the deposition information used to complete the report. He instead argued that, in light of the discovery disputes as a whole, the magistrate judge's order requiring such designation was inappropriate. Wood has not shown that the district court acted outside its discretion in restricting the contents of the second report, and he has not demonstrated that he was justified in failing to comply with those restrictions.

The magistrate judge further concluded that the modeling present in the second report would have been "something of a surprise" to PACCAR, considering that the first report lacked modeling and testing. Wood also has not shown that the report was so important to his case that limiting its use to rebuttal alone was an abuse of discretion. Wood was able to question Dr. Vlahinos on rebuttal about the modeling in his second report that strengthened the conclusions to which he testified during his case-in-chief. And while the district court and magistrate judge had indicated that such testimony would only be permissible should PACCAR attack the first report's lack of testing, the district court instead allowed the evidence to be admitted even though PACCAR had not opened the door to its admission. The district court observed that "the jury has a right to hear everything and make up their own mind" about the testimony. Further, the district court had instructed the parties that video evidence would be excluded from both parties' rebuttal cases if they could not come

to an agreement, and Wood rejected PACCAR's offer that both sides use their video simulations. The district court, acknowledging the importance of the report, thereby exercised its discretion to lessen the sanction on Wood, and it did not abuse its discretion by excluding the second report from Wood's case-in-chief.

Finally, the district court did not abuse its discretion by concluding that Wood failed to show the good cause required by the Federal Rules to modify the scheduling order following the mistrial. See Fed. R. Civ. P. 16(b)(4). Wood was not entitled to an unearned trial advantage because of a mistrial caused by events that did not pertain to the report's original timeliness. Reopening discovery at that late stage would have, as the district court observed, "expanded disagreements and litigation; disturb[ed] settled expectations of the parties; require[d] significant additional pretrial preparation; and further complicated the retrial."

## B. Testimony About the State-of-the-Art Defense

Wood argues that the district court erred by admitting Bean's and Manuel's testimony about PACCAR's state-of-the-art defense because it constituted undisclosed expert testimony, in violation of Rule 26. Wood failed to preserve this objection, however, for although he had moved *in limine* to exclude testimony and evidence about PACCAR's state-of-the-art defense, the district court did not rule on the issue, and Wood did not object to any specific testimony as undisclosed expert testimony during the second trial.[4] See Fed. R. Evid. 103 (requiring that a party must preserve error by timely objecting on a specific ground, unless the district court has

---

[4]Wood filed two additional motions *in limine* regarding the state-of-the art testimony. The first was denied as being untimely. The second was denied as being duplicative of the first motion *in limine*. The district court thus never "rule[d] definitively" on Wood's motion to exclude state-of-the-art testimony. See Fed. R. Evid. 103(b).

ruled on the issue "definitively on the record—either before or at trial"). Wood notes that certain objections and the court's rulings on demonstrative exhibits related to Bean's testimony were preserved from the first trial to the second trial, but those objections and rulings are not directly related to Wood's instant appeal of the introduction of allegedly expert testimony. We thus review for plain error. See Russell v. Anderson, 966 F.3d 711, 720 (8th Cir. 2020).

Wood has not shown that the district court plainly erred by admitting Bean's and Manuel's testimony. A lay witness may testify about perceptions based on his industry experience, and we look to both the witness's experience and his testimony to determine whether that testimony is factual or expert opinion. United States v. STABL, Inc., 800 F.3d 476, 486–87 (8th Cir. 2015). Bean's testimony was based, at least in part, on his 33-year career at PACCAR, his participation in vehicle testing around the time that the truck at issue was designed, and his knowledge of industry standards about which he had learned through his participation in PACCAR's truck crash worthiness subcommittee. Manuel, likewise, gave testimony based on his personal knowledge of PACCAR's design process, his career experience in vehicle design and testing, and the customs in the industry. Contrary to Wood's assertion, Iowa law permits industry custom evidence to support a state-of-the-art defense. See Hughes v. Massey-Ferguson, Inc., 522 N.W.2d 294, 296 (Iowa 1994) ("[A] jury may consider industry custom as evidence of state of the art, but such evidence does not establish conclusively the state of the art defense."). We thus conclude that the district court did not err in admitting Bean's and Manuel's testimony.

C. Evidence of Compliance with Safety Standards

Wood argues that the district court erred by admitting testimony about PACCAR's compliance with irrelevant safety standards. We review the district court's evidentiary decision for abuse of discretion, "reversing only when an

improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Summage, 575 F.3d 864, 877 (8th Cir. 2009) (quoting United States v. Two Shields, 497 F.3d 789, 792 (8th Cir. 2007)).

Even assuming that the testimony was irrelevant, Wood has not shown that the contested evidence had more than a slight influence on the verdict.  At least two witnesses testified at trial to PACCAR's compliance with allegedly irrelevant safety standards, including its performance on tests to verify the safety of the truck in rollover crashes.  But Wood was fully able to test on cross-examination the relevance of the standards, and he could have sought testimony that, consistent with PACCAR's pretrial disclosures, no safety test specifically examined the risk of leg injuries in a frontal crash.  Indeed, Dr. Vlahinos testified that he was unaware of any standards governing the front bumper's ability to protect against a frontal crash.  Wood's counsel argued in closing that PACCAR had performed rollover testing, but had failed to adequately test the truck in frontal-crash settings.  He also emphasized that no government, industry, or PACCAR corporate standard  would have governed the allegedly defective bumper.  The jury was thus unlikely to have been confused or led astray by discussion of the safety standards. We conclude that it is unlikely that the introduction of testimony relating to rollover or other safety standards had more than a slight influence on the verdict.

The judgment is affirmed.

_____